UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:22-cr-00096-DCR

UNITED STATES OF AMERICA                                                              PLAINTIFF

V.              **UNITED STATES'S SENTENCING MEMORANDUM**

RALPH G. TACKETT                                                                          DEFENDANT

\* \* \* \* \*

With the Court's permission, the United States requests leave to file this document for the Court's consideration in light of the Court's Order to file a memorandum addressing any unresolved objection no less than 10 days prior to Sentencing. [DE 10: Sentencing Order]. This memorandum includes the United States' position on the unresolved objection to a two-level sentencing enhancement in this case. As cause for this modification the United States' submits its position was already included in the addendum to the PSR but the issue was left unresolved according to the final PSR filed December 30, 2022. The undersigned took time away from the office over the holiday weekend and comes now to enter the United States' complete sentencing recommendation including redacted copies of exhibits in support of the victim's restitution request in advance of the scheduled hearing.

Defendant Ralph G. Tackett was a respected member of a small town Church who was entrusted to safeguard its finances as Treasurer. Instead of conducting business honestly, he made daily choices which led him to steal hundreds of thousands of dollars

over the course of 43 months from Church coffers until law enforcement intervened. Ultimately, he admitted his own wrongdoing, entered a guilty plea to a single count of wire fraud, and the Court accepted his plea on September 12, 2022 [DE 8: Plea Agreement]. The Defendant has also accepted full responsibility for the financial harm he caused in the process. The Defendant's conduct warrants a custodial sentence and the victim should be made whole. The United States recommends a term of imprisonment of 33 months, at the lowest end of the guidelines as calculated by the United States, and an order by the Court for the Defendant to pay $532,807.46 in restitution to the victim, the Church.

**I.    THE APPLICABLE ADVISORY GUIDELINES RANGE**

The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. King*, 553 Fed. Appx. 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The parties agree that the applicable guideline to start the calculation in this case is USSG § 2B1.1, which covers embezzlement crimes such as wire fraud and carries a base offense level of 7. Both parties and USPO further agree that two Specific Offense Characteristics apply, § 2B1.1 (b)(1)(G) which results in 12-level increase because the loss amount is more than $250,000 but less than $550,000, and USSG § 2B1.1(b)(2)(A)(iii), which yields a two-level increase because the offense resulted in substantial financial

hardship to one or more victims. The parties also agree that a two-level upward adjustment for Tackett's Role in the Offense, in that he abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense pursuant to §3B1.3 is warranted.

## II.   UNRESOLVED OBJECTION

The United States has one unresolved objection to address. The application of a two-level enhancement pursuant to USSG § 2B1.1(b)(10)(C) included in the PSR at paragraph 19 and subsequently discussed in the addendum should not be applied. The United States does not believe the evidence sufficiently supports an additional two-level enhancement pursuant to USSG § 2B1.1(b)(10)(C) which requires "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." While Mr. Tackett did fail to report accurate monthly finances to the Pastor and Board of the Church and took money in a variety of ways over the years, the United States does not view this as sufficiently sophisticated to warrant the application of this enhancement. Even when the various mechanisms he used to steal from the Church are considered such as skimming from the offerings collected during services in addition to the fraudulent wires he made directly from the Church's operating account to his personal credit cards, the United States would not characterize his tactics as "sophisticated." Mr. Tackett's conduct and attempts to conceal his conduct throughout his scheme were not "especially complex or especially intricate" as Application Note 9(B) pertaining to Subsection (b)(10) explains they should be to qualify for this

enhancement. Any simple review of the Church's bank account statements alone, for example, would have revealed Mr. Tackett's crime. He stole money by making electronic transfers, cashing checks into his personal bank account, and literally taking money from offering trays – the means to his ends were simple, easy, and opportunistic.

The Defendant's conduct is otherwise sufficiently accounted for in the abuse of trust enhancement whereby his authority as Treasurer went unchecked which allowed him to easily conceal his crimes. The Defendant did not report what he was doing to the Pastor, the Board, or its accountants. The Church community never suspected him and believed the Church's financial woes were merely the natural growing pains of being a newer Church and having just moved into an updated and more expensive facility. The Defendant had no sophisticated scheme and didn't need one because no one at the Church was looking: He just paid who and what he wanted to pay with Church money to satisfy the debts and demands upon him which naturally evolved over the years.

For these reasons, the United States recommends a total offense level of 20 for this Defendant is the proper calculation after the reduction pursuant to USSG §3E1.1(a) has been applied. This is two points lower than USPO's calculation reflected in paragraph 26 of the PSR. With a criminal history category of I, the government calculates Tackett's range for a custodial sentence is 33 to 41 months under this calculation.

### III. THE UNITED STATES'S SENTENCING RECOMMENDATION UNDER 18 U.S.C. § 3553(A)

As a result of *United States v. Booker*, 543 U.S. 220 (2005), the sentencing

guidelines are effectively advisory. While a sentencing court must still consider the guidelines, it must also consider other factors as well and, in particular, the factors specifically identified in 18 U.S.C. § 3553(a). *Id.*

Under § 3553(a), a court "shall impose a sentence sufficient, but not greater than necessary" to comply with the following purposes of sentencing: To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the particular sentence to be imposed, a court also must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the sentencing purposes listed above; (3) the kinds of sentences available; (4) the types of sentences and sentencing range established by the sentencing guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. The relevant factors identified by the United States are discussed below.

    A.    *The Nature and Circumstances of the Offense*

In support of a guidelines sentence as calculated by the United States, the Court

should take into account the entire course of the Defendant's relevant conduct, which began in December of 2015 and continued relentlessly until law enforcement intervened in the summer of 2019. The Defendant's actions and omissions in the course of perpetuating this crime throughout this time duration were countless and often occurred multiple times in one day. *See* USSG § 1B1.3.

His blatant and ongoing disregard for the trust placed in him in his position as Treasurer shows that this was not just a reckless or fearful violation of law – it was a daily lifestyle he adopted. He treated the donations and funds of the Church as if he were entitled to them – he managed the Church's operating account as if it were his own secret bank account. He concealed his thefts by generating over-simplified monthly reports that omitted the numerous unauthorized transfers of funds he made to pay his own personal debts and keep his good reputation intact while the Church, especially its Pastor, suffered and continues to suffer as it rebuilds from this betrayal. While the evidence shows the Defendant became a victim of cyberstalking and was legitimately fearful of an exposure of his sexual exploits, the Defendant had years of time to report the threats yet he continued to steal from another to protect himself and his family's reputation. Furthermore, there is no evidence of third-party threats from late 2015 and through 2016 when his fraudulent scheme began, which leads to the inescapable conclusion that he started down this criminal path on his own volition.

      **B.**    *Imposing a Just Punishment and Avoiding Unwarranted Sentencing Disparities*

According to the U.S.S.C. Judiciary Sentencing Information online reference tool, the average term of imprisonment across defendants subject to USSG § 2B1.1 with a final offense level of 20 and with a Criminal History Category of I is 26 months.[1] The United States, being aware of all relevant facts including those which may offer some mitigation, recommends a low-end guideline sentence of 33 months given the totality of this Defendant's particular circumstances. The United States recommendation admittedly exceeds the referenced national average of defendants whose cases share the traits described above but the details of the other cases that feed that average remain unknown to the undersigned.  Thus, the United States is basing this recommendation on the facts of this Defendant's case and while it finds reason to veer to the low end of the calculated range, cannot articulate the evidence in such a way to support a sentence below a Guidelines sentence.

Notably, the United States Sentencing Commission has also gathered and considered substantial evidence about a broad category of "white-collar" crimes and, in response, Congress along with the Sentencing Commission made a deliberate decision to raise sentences for white-collar economic crimes.  "The Commission shall insure that the guidelines reflect the fact that, in many cases, current sentences do not accurately reflect the seriousness of the offense." 28 U.S.C. § 994(m). The Sentencing Commission made this point when it issued the original version of the guidelines: "The Commission has not

---

[1] This reference tool is located here: https://jsin.ussc.gov/analytics/saw.dll?Dashboard. It was accessed and utilized to retrieve the data by the undersigned on December 28, 2022.

simply copied estimates of existing practice as revealed by the data (even though establishing offense values on this basis would help eliminate disparity because the data represent averages). Rather, it has departed from the data at different points for various important reasons. Congressional statutes, for example, may suggest or require departure…the *data may reveal inconsistencies in treatment, such as punishing economic crimes less severely than other apparently equivalent behavior*." USSG § 1A1.1 (editorial note A–3, reprinting original 1987 introduction to Sentencing Guidelines) (emphasis added). Its decision was public and was consistent with the general instructions from Congress to raise sentences for white-collar economic crimes, especially for purposes of deterrence. *See* S. Rep. No. 98–225, at 76 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3259 (noting that "major white collar criminals often are sentenced to small fines and little or no imprisonment," creating the impression that "certain offenses are punishable only by a small fine that can be written off as a cost of doing business"); *United States v. Rivera*, 994 F.2d 942, 955 (1st Cir.1993) (Breyer, J.) (noting Commission's intent to equalize punishment for white collar and blue collar crime); Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 20, 22 (1988). Over the past 35 years, Congress has had many opportunities to amend the § 2B1.1 guidelines and have done so. So, this particular guideline does reflect congressional policy with current accuracy which, the United States offers, is a good baseline by which this Defendant's crime can be judged. The United States' recommendation in this case reflects this intent.

Case: 5:22-cr-00096-DCR  Doc #: 20  Filed: 01/04/23  Page: 9 of 15 - Page ID#: 75

Finally, a low-end Guidelines sentence that does not include an enhancement for the use of sophisticated means, would insure Tackett is justly punished for his repeated infractions and the resulting harm he caused but not inflict more punishment than is sufficient. Even if the Court varies or departs downward in light of any of Tackett's personal circumstances and the coercive threats that developed, the facts the United States finds persuasive to warrant a Guideline sentence remain: the Defendant started on this criminal path before exposure of his personal sexual life was threatened, the frequency of his actions and omissions were weekly and often daily, and he carried on with his scheme for approximately 43 months.

### C. *To Deter Criminal Conduct and Protect the Public*

Mr. Tackett does not present a threat to the public. His crime was committed when no one was looking and ceased as soon as it was discovered. Furthermore, the damage to his reputation and family that he feared would occur if he were exposed is no longer a secret. Given his age and his attempts to cooperate with the government at every turn, the sentence imposed in this case should factor in the very real need to generally deter would-be violators from engaging in similar conduct. *See United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."). While Tackett must be held accountable for countless actions that amounted to a mountain of harm for his victim, the need for general deterrence is greater than specific deterrence here. The

9

United States recommends the Court fashion a sentence to include a significant term of incarceration which will deter others from engaging in similar offenses and curb harm to future victims.

D. *History and Characteristics of the Defendant*

The PSR sets forth the Defendants' history and characteristics in detail. The need to deter others and all the other factors that weigh against the Defendant in this case should be balanced against the fact that Tackett is not likely to present a future risk to the public. He is no longer in a position of trust, his criminal history is virtually nil in Category I, he does accept responsibility for his offense (with the caveat that he was being extorted by a cyberstalker) and he has complied with the terms of his release pending sentencing. The United States believes Tackett presents a low risk for recidivism and submits that the history and characteristics this particular Defendant weigh in favor of a sentence at the low end of the Guideline range as calculated by the United States or as determined by the Court at Sentencing.

E. *No Fine Requested*

The Court also considers "the kinds of sentences available" under 18 U.S.C. § 3553(a)(3). In addition to any term of imprisonment the Court might impose, the Court may consider imposing a fine, as fines can have a meaningful deterrent effect in cases like the present. *See United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993) ("The system of penalties under the Guidelines is constructed on the belief that higher fines, and longer sentences of imprisonment, are more effective deterrents."); *see also* U.S.S.G.

§§ 5E1.2(d)(1). The Court could impose a fine of up to $1,024,084.00 on the Defendant but the United States is not seeking a fine. The Defendant's willingness to accept a money judgment for direct losses as well as an Order accounting for the full pecuniary harm he caused the victim in restitution is paramount. Such an order, the United States recognizes, would inhibit his ability to pay a fine on top of restitution regardless.

      F.    *Restitution*

The parties agree restitution is due in this case and the victim is the Church. [DE 8: Plea Agreement at pp. 11-12]. Pursuant to 18 U.S.C. § 3663A, a private company, such as the Church in this case, is an identifiable "person" which qualifies as a victim. The following pecuniary losses directly resulted from the Defendant's wire fraud offense and this is not in dispute.

The United States respectfully requests an order of restitution identifying the Church[2] as a victim of the Defendant's crime and in the amount of $532,807.46. First, the parties agreed that the loss amount was $512,042 based on forensic analysis of bank records during the relevant period. *See* Ex. 1 and DE 8: Plea Agreement at p. 11. Government Exhibit 1, redacted, summarizes the ways and total amounts of funds, respectively, that the Defendant embezzled directly from the Church. After reviewing Church records and victim statements an additional $20,765.46 in expenditures was

---

[2] The identity of the Church is known to the parties and specific contact information has been tendered to the United States Probation Office and the Clerk of the Court in Lexington, Kentucky.

11

evidenced and qualifies as additional losses the Church is entitled to recoup in restitution. The United States shared summaries of witness statements, supporting documentation, and its legal explanation for these additions and the Defense has made no objection to the addition of the following amounts to the total restitution due and owing to the Church.

The additions specifically include:

 1) IRS late fees/penalties: $2,110.51

This total includes only the penalties, fees, and interest accumulated as a result of late tax payments and excludes any taxes that were due and owing to the IRS. *See* Ex. 2, page 3-5.

 2) Worker's Comp Civil Penalty: $2,700.00

This total was evidenced by proof of payment from the Church's operating bank account accompanied by the Church Treasurer's statement.

 3) Mortgage Late Fees: $11,538.95

This total is supported by FBI Forensic Accountant Tressa Whittington's investigation and analysis.  *See* Ex. 3.

 4) Extra Accounting Costs: $4,416.00

This total is supported by the statement of the Church's Treasurer and reduced by operation of restitution principles to account for only the costs the Church directly incurred to remedy the financial harm the Defendant caused.

These four line items total $20,765.46. When added to the total funds directly embezzled, the victim's losses amount to $532,807.46.

The first three line items are fees and penalties the Church incurred during the relevant time when Tackett was spending Church money to cover personal expenses and demands and did not disclose that he was failing to pay the IRS, Worker's Compensation Insurance, and the Church's mortgage in a timely fashion. As soon as Tackett's crime came to light, the Church began a comprehensive review of its finances and paid these debts in 2019 and 2020.

With respect to item 4, the Church explained it already employed a Children's Minister who happened to have a finance background. After Tackett resigned as Treasurer, this Children's Minister was approached by leadership and was paid additional compensation to take on accounting duties to help manage the Church's finances along with the (new) treasurer. Most significantly, part of the Children's Minister's added financial role was to manage and comply with additional reporting requirements the mortgage lender put in place due to Tackett's malfeasance.[3] The $4,416.00 accounts for the 12 additional hours of time per year required to meet the additional filing and reporting mandate for the life of the restrictive mortgage imposed by the lender due to the Defendant's failure to pay the mortgage on a number of occasions. *See* Ex. 3. The Church agreed to pay the employee $16.00 per hour for this financial service. The current Church treasurer, known to the parties, confirmed these four figures and attested that no

---

[3] Evidence recovered by the Forensic Accountant and referenced by the current Treasurer suggests additional costs are now built into the mortgage fee structure by the lender as a result of the Defendant's malfeasance; however, calculating the differential is cumbersome and somewhat speculative and is not included in the restitution calculation for these reasons.

13

insurance or reimbursements have been received to cover these losses. The United States, on behalf of the victim and at the victim's behest, requests $532,807.46 in restitution for the Church.

## IV. CONCLUSION

Based upon its U.S.S.G. calculation and after consideration of the applicable § 3553(a) factors, the United States recommends a sentence of 33 months imprisonment for the Defendant and one year of supervised release thereafter. Additionally, the United States asserts restitution is appropriate in this case and respectfully moves the Court to order the Defendant to pay $532,807.46 in restitution to the Church in recompense for the pecuniary losses suffered as a result of the Defendant's wire fraud offense.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: *s/ Tashena A. Fannin*
Tashena A. Fannin
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4829
FAX (859) 233-2747
Tashena.fannin@usdoj.gov

CERTIFICATE OF SERVICE

On January 04, 2023, I electronically filed this motion through the ECF system, and I sent this motion by electronic mail to:

>Bernard Pafunda and Jarrod J. Beck
>*Attorneys for Ralph G. Tackett*
>
>Brittany N. O. Baker
>*United States Probation Officer*

*s/ Tashena A. Fannin*
Assistant United States Attorney
